531 P.2d 1157

**Wesley W. PECK et al., Plaintiffs-Respondents,**

v.

**Harold H. SHARROW et al., Defendants-Appellants.**

**No. 11356.**

Supreme Court of Idaho.

Feb. 18, 1975.

William D. Collins of Collins & Manley, Boise, for defendants-appellants.

Everett D. Hofmeister, Jr., of Lyons & Hofmeister, Sandpoint, for plaintiffs-respondents.

McFADDEN, Justice.

This action involves the priority of use of the waters of Sallee Creek in Bonner

County. The plaintiffs-respondents, Wesley W. Peck and Bertha M. Peck, Alfred C. Peck and Edith E. Peck, instituted this action against defendants-appellants Harold H. Sharrow and his wife, seeking to enjoin the appellants from interfering with the rights to use of the waters of Sallee Creek. The trial court, after first issuing a temporary injunction against appellants, heard the case without a jury on the issues framed by the pleadings of the respective parties. The trial court entered its findings of facts, conclusions of law and amended judgment and decree. In the judgment, the trial court established the rights to the use of the waters of Sallee Creek, decreeing that the respondents were entitled to 0.2 cubic feet per second with a date of priority of August 3, 1935, and 0.8 cubic feet per second, with a date of priority of June 5, 1944, to be used for domestic and irrigation purposes on lands owned by the respondents. The trial court also decreed that the appellants were entitled to 0.16 cubic feet per second, with the date of priority of September 1, 1965, for domestic use and for irrigation. The trial court also required the respondents to place a measuring device in the stream, and prohibited the appellants from diverting any waters of the stream when the amount of flow over the measuring device was less than 1.0 cubic feet per second.

On this appeal the appellants have made twelve assignments of error. In substance, the appellants contend the trial court erred in entering its decree in favor of the respondents on the basis of two separate water licenses and certificates, and in not granting appellants' right to the use of water out of Sallee Creek with a date of priority of 1931. Appellants contend that the evidence justifies entry of a judgment in their favor for domestic and agricultural use of the waters of Sallee Creek with a date of priority of 1931, based on the use of such water by their predecessors in interest.

Sallee Creek, the subject of this litigation, is a small stream that flows southerly from its headwaters near the northern boundary of Section 27 Township 54 North, Range 2 West of the Boise Meridian. The Sharrows own the northwest quarter of Section 27, and the Pecks own land in Section 28 which adjoins the Sharrows' land. Sallee Creek flows through the Sharrows' lands onto the Pecks' lands.

On April 19, 1944, the State Reclamation Engineer issued to respondent Wesley W. Peck Water License No. 14828, for 0.2 cubic feet per second of waters out of Sallee Creek for irrigation and domestic use on lands owned by him. The date of priority on this license and certificate of water right was August 3, 1935. On December 4, 1950, a second water License was issued to Wesley W. Peck bearing no. 19523, with a date of priority of June 5, 1944. This second license was for 0.8 cubic feet per second.

The points of diversion for the use of the water under these licenses was in the Northeast Quarter of the Southeast Quarter of Section 28, owned by the Pecks.

The evidence disclosed that near its headwaters Sallee Creek has two forks or branches, generally running southwesterly. The southern fork carries the most water. The record further shows that there is an old ditch running from the southern fork southerly through the Sharrow property, pa;t a house on their property and continues on a short distance south from that house. The Pecks have a small dam some distance below the convergence of the two forks, and they have allowed the water to accumulate in this dam and later draw it out.

In 1965 the Sharrows purchased the property now owned by them. Since the date of purchase, they have been on their property only a relatively short time each year, anywhere from two weeks to a month. The Sharrows testified that at the time they purchased the property they visited with Wesley Peck and his wife. Mr. Peck showed the Sharrows how to get water from the south fork of Sallee Creek into a ditch leading southerly to the vicinity of a house on the Sharrow property.

Mrs. Sharrow stated that Mr. Peck told them when he was showing how the water was to be diverted out of the creek that "that was our water. * * * He said, this is your water and I have my water, but this is your water."

Mr. Sharrow testified that Mr. Peck went with the Sharrows to show them how to get their water. Mr. Sharrow testified that Mr. Peck took a couple of rocks and moved them into the stream which put the water down the ditch which continued on down near to the house on the Sharrow property. He stated: "Now, this happened in the afternoon, probably about 2:00 o'clock, and he stated that at that time that this was our water, this was our water supply, that he did not need it, he had his supply which came from another supply." However, Mr. Peck denied ever taking the Sharrows up to show them how to get their water.

In July 1969 the Sharrows turned all the water in the south fork of the creek into the ditch leading through their place; the Pecks were without water for a couple of days. Upon leaving the property, the Sharrows turned the water back into the stream, and the Pecks again received a flow of the water in the stream. In the latter part of June and the first part of July, 1970, the Pecks again suffered a shortage of water. Alfred C. Peck testified that he went upon the Sharrows' property and observed the flow of the south fork of the creek was again dammed and water diverted into the ditch on Sharrow's property. Again the Pecks were without water for several days. The Pecks instituted this action in July 1970, and the trial court issued an order restraining the Sharrows from interfering with the flow of the waters of Sallee Creek.

The Sharrows' witness, Largent, a civil engineer, testified that he had examined the stream involved, and put in measuring devices on three points in the stream, one in the north fork, one in the south fork, and one below the point where the two forks converged. He testified that the amount of water flowing in the streams at the time he measured the flow in November, 1970, before a heavy freeze, and again in December, after a heavy freeze, was practically identical in both instances and represented the low water flow. Largent testified that from his measurements he determined that on the north fork there was about 0.06 cubic feet per second; that on the south fork there was about 0.15 cubic feet per second; and on the main stream after the two forks joined, he found about 0.36 cubic feet per second. Largent also testified that he again observed the flow in the streams on June 20, the day the trial commenced, and he estimated that at that time the flow in the south fork was about twice as great as when he had previously measured it; that there was no measurable flow in the north channel; and that in the main channel there was about a ten percent greater surface flow.

The trial court found that the respondents held two valid water licenses to waters of Sallee Creek issued by the Department of Reclamation, one for 0.2 cubic feet per second with priority date of August 3, 1935 (No. 14828), and another for 0.8 cubic feet per second with priority date of June 5, 1944 (No. 19523). The court also found that the appellants, while they established that as early as 1931 water was diverted from springs arising upon their land which flowed into Sallee Creek, they failed to establish the amount of such early diversion. However, by the testimony of Mr. Largent, they established that as of September 1, 1965, they had a right to use 0.16 cubic feet per second of waters of Sallee Creek.

As previously stated, by its judgment the trial court established the amounts of water with the dates of priority set by the findings of fact and conclusions of law. The court also ordered the Pecks to establish a measuring device above their reservoir in conformity with the requirements of the Department of Water Administration. The court also enjoined the Shar-

rows from diverting any waters when the flow of the creek at the measuring device was less than 1.0 c. f. s.

The trial court held that the Pecks had established a prima facie right to the use of the waters of Sallee Creek on the basis of the two water licenses they held, and that the Sharrows in their proof failed to overcome the prima facie case established by the Pecks. The trial court also held that the Pecks failed to establish any damages and denied their claim for damages.

█ In this action the stream involved contains a very minimal flow of water. Two parties are desirous of using this water. The Pecks have established their right to the use of the waters on the basis of their two water licenses. The Sharrows attempted to establish a prior right on the basis of prior use and application of the waters out of the south fork of Sallee Creek to a beneficial use. However, the trial court found that their proof was insufficient to establish such a right primarily on the basis that they had failed to establish the amount of water beneficially used on their land for domestic or agricultural purposes. Even though the evidence did reflect that there was an old ditch of undetermined age leading from the south fork of Sallee Creek down past the dwelling on the Sharrows' land, still there was no specific proof of the amount of water that came through this ditch nor that it was all beneficially used. Even though there was proof that the water had been piped into the residence on the Sharrows' property, still the amount of water necessary for domestic purposes and the time of such use was not established. It is recognized that Idaho Constitution Art. 15, § 3, gives persons desirous of using water for domestic purposes a favored position when it states,

> "Priority of appropriation shall give the better right as between those using the water; but when the waters of any natural stream are not sufficient for the service of all those desiring the use of the same, those using the water for domestic purposes shall (subject to such limitations as may be prescribed by law) have the preference over those claiming for any other purpose * * *."

Although those using water for domestic purposes have a preference over those claiming water for any other purpose, this preference is limited by the provision of the constitution requiring just compensation for the taking of private property for a public use when the water has already been appropriated for an inferior use. Idaho Constitution, Art. 1, § 14, Art. 15, § 3; Basinger v. Taylor, 30 Idaho 289, 164 P. 522 (1917).

█ The procedure adopted by the trial court in requiring the Pecks to establish a measuring device above their point of diversion is a practical solution of the problem.

█ From the record before this court it is clear that the findings of fact by the trial court are sustained by substantial and competent evidence. It is also clear that the Pecks established a prima facie right to the use of waters from Sallee Creek on the basis of the water licenses held by them. I.C. § 42–220. Basinger v. Taylor, 30 Idaho 289, 164 P. 522 (1917).

We find no error on the part of the trial court, and the judgment is affirmed. Costs to respondent.

DONALDSON, J., and MAYNARD, D. J., concur.

McQUADE, Chief Justice (dissenting).

The trial court dismissed the appellants' claim even though the evidence disclosed that as early as 1931, water was diverted from a spring arising upon appellants' land which flowed into Sallee Creek, and which was used for domestic, livestock watering and irrigation purposes by the appellants' predecessors in interest upon the land that appellants now own. The basis for this ruling was that the appellants' proof was completely devoid of the amount of such diversion. I do not believe this to be en-

tirely correct. There is evidence in the record which would indicate that an ascertainable quantity of water was diverted from the spring onto the appellants' land while the land was held by their predecessors in interest prior to the issuance of the water permits to the respondents.

At the very least, the appellants should be given the opportunity to establish the extent of the diversion. Accordingly, I would remand this case back to the trial court for this evidentiary determination. If the appellants can present to the court sufficient evidence as to the amount of water actually diverted and applied for a beneficial use by their predecessors, and if such diversion antedated the water permits issued to the respondents, then the order of priority for the use of the waters of Sallee Creek must be reversed.

BAKES, J., concurs.