623 P.2d 455

Wallace SEARS and Ramona Sears, husband and wife, Plaintiffs-Appellants and Cross-Respondents,

v.

Glenn BERRYMAN and Virginia Berryman, husband and wife, Defendants-Respondents and Cross-Appellants,

and

Eugene Ward, as Watermaster of Water District No. 43–C, and Stephen Allred, Director of the Department of Water Resources of the State of Idaho, Defendants-Respondents.*

No. 13241.

Supreme Court of Idaho.

May 4, 1981.

* *Editor's Note:* The opinion of the Supreme Court of Idaho in *Overman v. Overman,* published in the advance sheets at this citation (623 P.2d 455), was withdrawn from the bound volume and will be republished with added appendix.

Robert L. Crowley, Lawrence H. Duffin of Duffin, Coughlan, Workman & Barker, Burley, for plaintiffs-appellants.

William Parsons, Burley, Josephine P. Beeman, Deputy. Atty. Gen., Boise, for defendants-respondents.

SHEPARD, Justice.

This is an appeal from a judgment adjudicating the rights as between various competing parties in and to waters diverted from Cassia Creek in a water district in Cassia County, Idaho. We affirm in part, reverse in part, and remand for additional findings and/or actions of the trial court.

In 1928, numerous rights to divert and use water from Cassia Creek were duly adjudicated. Among the water rights adju-

dicated and decreed in that 1928 judgment [hereinafter the *Jobe Adams* decree] were the following awarded to Sadie Beecher:

| 1872 | .62 cubic feet per second | (31 inches) |
| 1873 | .60 cfs | (30 inches) |
| 1879 | 1.20 cfs | (60 inches) |
| | TOTAL | 121 inches |

That 1928 decree also awarded Clifford and Hazel Beecher 1.88 cfs (94 inches) with a priority of 1872. The 94 inches decreed to Clifford Beecher are not at issue, but are relevant for determining the amount of Sadie Beecher water actually used on the Clifford Beecher ranch since 1939.

Sadie Beecher died in 1937, leaving to each of her children, Sadie Beecher Sears (plaintiffs' predecessor) and Clifford Beecher (defendants' predecessor) an undivided one-half interest in her property and the appurtenant water rights. On June 2, 1938, those two children of Sadie Beecher, by warranty deed, divided and redistributed the land in their mother's estate and the water decreed thereto as follows:

| .36 cubic feet of the .62 cfs 1872 right | (18 inches) |
| .35 cubic feet of the .60 cfs 1873 right | (17.5 inches) |
| .69 cubic feet of the 1.20 cfs 1879 right | (34.5 inches) |
| TOTAL | 70 inches |

To the land received by Clifford Beecher, the remaining balance:

| .26 cfs of the .62 cfs 1872 right | (13 inches) |
| .25 cfs of the .60 cfs 1873 right | (12.5 inches) |
| .51 cfs of the 1.20 cfs 1879 right | (25.5 inches) |
| TOTAL | 51 inches |

It is the 51 inches of water deeded to Clifford Beecher in that conveyance of 1938 which is the subject matter of the dispute between the parties.

The land inherited by Sadie Beecher Sears was purchased by her son Wallace Sears and his wife, plaintiffs-appellants herein, in 1963. The Clifford Beecher land was sold to one Smith in 1957. The defendants-respondents herein, the Berrymans, first leased the ranch from Smith in 1961 and later purchased the ranch in 1965.

Appellants Searses alleged that in 1939 their predecessor in interest (Sadie Beecher Sears) commenced using the entire 121 inches of water decreed to Sadie Beecher in the 1928 Jobe Adams decree. The Searses thus claim on various theories not only the 70 inches of water which was the subject of the 1938 warranty deed to Sadie Beecher Sears, but also that 51 inches of water deeded to Clifford Beecher in that 1938 deed.

On the other hand, defendants-respondents, the Berrymans, contend that they and their predecessors in interest have always used at least a part of the aforesaid and contested 51 inches of water.

At all relevant times, the delivery of water to the parties herein and their predecessors has been the responsibility of the various district watermasters since the area in question is located within the boundaries of Water District 43–C. I.C. § 42–607. When the Berrymans purchased the ranch in 1965, they evidently learned of the 1938 deed distributing the Sadie Beecher lands and water and Mr. Berryman requested the watermaster to increase the delivery of water to his lands in accordance with that 1938 deed. It is disputed whether such additional water was then delivered. In any event, some years later Mr. Berryman contacted the Department of Water Resources concerning that 1938 deed and his claim that the watermaster had failed to deliver water in accordance with the deed. In 1977, the Department of Water Resources instructed the then watermaster to make certain changes in the water delivery.

In 1977, the Searses instituted the instant action to determine the rights of the parties to the contested 51 inches of water. Following trial, the court initially found that the Berrymans and their predecessors had consistently used 120 inches of water, which amount consisted of 94 inches which had been decreed to Clifford and Hazel Beecher pursuant to the 1928 Jobe Adams decree, 12 inches from a third source, and only 14 inches of the contested 51 inches. The court concluded that plaintiffs-appellants Sears had established their right to 37 of the 51 inches of disputed water by virtue of the doctrine of laches and equitable estoppel.

Upon motion, the court amended its findings and conclusions to state that of the 120 inches consistently used by the Berrymans, 94 inches were from the 1928 Clifford

Beecher decreed right and 26 inches were from the 1872 and 1873 Sadie Beecher decreed and 1938 deeded rights; that the Searses and their predecessor had for a period in excess of 37 years, commencing in 1939, received and beneficially used that portion of the 1872, 1873 and 1879 Sadie Beecher decreed rights which were deeded to Sadie Beecher Sears in 1938, and also 25 inches of the 1879 right which was deeded to Clifford Beecher in 1938; that the Berrymans and their predecessors made no objection during those years to the Searses' use of the 25 inches of the disputed 51 inches of water and that the Searses and their predecessor paid the assessments on their share of the 1872 and 1873 decreed Sadie Beecher water and the entire 1879 Sadie Beecher decreed water, since 1939.

The court thereupon concluded that the Searses had established a right to 25 inches of the water which was deeded to the Berrymans' predecessor in 1938 by virtue of the doctrine of laches and equitable estoppel based on the Searses' long and continuous use of the water without objection by the Berrymans or their predecessors. Further, the court concluded that the Berrymans were estopped and enjoined from asserting any right to any of the Sadie Beecher decreed water except for 26 inches being 13 inches each from the 1872 and the 1873 decreed rights.

On appeal, the Searses assert that in addition to the 25 inches of 1879 water awarded to them, they also acquired the 13 inches of the 1872 and the 13 inches of the 1873 waters which were the subject of the 1938 deed to the predecessor of the Berrymans. Their assertion is based upon the theories of adverse possession, abandonment, forfeiture and estoppel by laches. The Berrymans conversely assert that none of those doctrines establish Searses' entitlement to any of the 1872, 1873 or 1879 water.

I.

We turn first to the contentions of the appellants that their entitlement to the water in controversy here was established by adverse possession. In 1969, I.C. § 42–607 was amended to provide: "[s]o long as a duly elected water-master is charged with the administration of the waters within a water district, no water user within such district can adversely possess the right of any other water user." Thus, at least following that amendment, the acquisition of a prescriptive right to water is precluded. Respondent Department of Water Resources asserts that this Court in *DeRousse v. Higginson*, 95 Idaho 173, 505 P.2d 321 (1973), held that the 1969 amendment to I.C. § 42–607 was merely a codification of the same principle which was stated in *Big Wood Canal Co. v. Chapman*, 45 Idaho 380, 263 P. 45 (1927). It is argued that Berrymans' water rights could not have been lost by adverse posession even prior to 1969 because it is undisputed here that the waters in question were at all relevant times administered by a watermaster. However, it is not necessary to decide the applicability of the doctrine of adverse possession in a watermaster administered district prior to 1969 since here the Searses did not show by clear and convincing evidence the necessary elements of adverse possession.

It was held in *Gilbert v. Smith*, 97 Idaho 735, 552 P.2d 1220 (1976), that prescriptive title to water, which is real property, may be acquired by adverse use for five years where such use is open, hostile, exclusive, continuous and under claim of right, but those elements must be shown by clear and convincing evidence and the burden to do so is on the claimant. The character of proof required to establish adverse possession to water is not precisely the same as that required for land. As stated in *Village of Fairview v. Franklin, Etc. Irr. Co.*, 59 Idaho 7, 17, 79 P.2d 531, 535 (1938), in reference to the requirement of exclusiveness, and quoted with approval in *Mountain Home Irrigation District v. Duffy*, 79 Idaho 435, 440, 319 P.2d 965, 967 (1957); *Linford v. G. H. Hall & Son*, 78 Idaho 49, 54, 297 P.2d 893, 896 (1956); *Follett v. Taylor Brothers*, 77 Idaho 416, 423, 294 P.2d 1088, 1092 (1956); and *Graham v. Leek*, 65 Idaho 279, 290, 144 P.2d 475, 480–81 (1943):

"... two parties may at the same time be in possession of water from a creek and neither hold adverse to the other;

each may justly claim the right to use the water he is using, without affecting the rights of the other, and therefore, in order to constitute adverse possession of water, *the burden is upon the claimant to show that his use of the water deprived the prior appropriators of water at times when such prior appropriators actually needed the water*; the use does not become adverse until it interferes with the use thereof by the prior appropriators, *and therefore proof merely that the claimant used water and claimed the right to use it is no proof whatever of adverse use."*

This rule requiring proof that the claimant deprived the prior appropriators of their water at times when such water was actually needed is reaffirmed in *Gilbert v. Smith, supra.*

Here the trial court specifically found that the 13 inches of the 1872 adjudicated water and the 13 inches of the 1873 adjudicated water which were the subject of the 1938 deed to Berrymans' predecessor were consistently used by the Berrymans and their predecessor and not by the Searses or their predecessor. Although there was conflicting evidence as to which party used those 26 inches of water, that factual controversy and its resolution lay within the province of the trier of the fact. The court's finding is supported by the evidence and will not be disturbed on appeal. *Gilbert v. Smith, supra; Peck v. Sharrow,* 96 Idaho 512, 531 P.2d 1157 (1975); *Carrington v. Crandall,* 65 Idaho 525, 147 P.2d 1009 (1944). Further, although the trial court found that the Searses in fact used all of the 1879 adjudicated water, including respondents Berrymans' 25 inches, there is no evidence that the Berrymans or their predecessors were ever deprived of those 25 inches of water at any time when they *actually needed the water.* On the contrary, even appellant Wallace Sears testified that he had never deprived Berryman or anyone else owning the Clifford Beecher ranch of their water when they needed it. The failure to establish the elements of exclusive use renders it unnecessary to discuss the remaining elements of adverse possession.

## II.

Appellants Searses also claim the entire disputed 51 inches on the theories of abandonment and forfeiture. Since the trial court found that the Berrymans had used the 1872 and 1873 water, which finding we have affirmed, clearly they neither abandoned nor forfeited the 1872 and 1873 water. Hence, we shall consider the theories of abandonment and forfeiture only in regard to the 25 inches of the 1879 water.

Although abandonment and forfeiture share certain common features, this Court in *Carrington v. Crandall, supra,* and again in *Gilbert v. Smith, supra,* made clear that the two are distinct legal concepts. Abandonment is a common law doctrine involving the occurrence of (1) an intent to abandon and (2) an actual relinquishment or surrender of the water right. Forfeiture, on the other hand, is predicated upon the statutory declaration that all rights to use water are lost where the appropriator fails to make beneficial use of the water for a continuous five year period. I.C. § 42–222(2).

The intent to abandon a water right must be evidenced by clear, unequivocal and decisive acts and mere non-use is not per se abandonment. *Gilbert v. Smith, supra. See Carrington v. Crandall, supra.* The question of whether the Berrymans and their predecessors intended to abandon the 25 inches of the 1879 right was necessarily one of fact. The record does not disclose such intent and there was no finding by the trial court of such intent.

Appellants Searses further argue that they should have prevailed in the trial court as to the disputed water on the basis that the Berrymans and their predecessors had failed to apply the water to beneficial use for a continuous period in excess of 37 years and therefore had forfeited their water right.

While the concept of adverse possession of water focuses upon a claimant's use of another's water rights, abandonment and forfeiture focus instead upon non-use by the original appropriator. Thus, under the doctrine of adverse possession, if the claimant is successful, title to the water is

vested in that claimant as completely as if the right had been conveyed to him by the original appropriator. *Williams v. Neddo,* 66 Idaho 551, 163 P.2d 306 (1945). Thus, the adverse possessor retains the same priority date as that enjoyed by the dispossessed party. However, in cases of abandonment and forfeiture, where the focus is upon the appropriator's non-use, the waters thereby lost by the appropriator revert to the state and are again subject to appropriation. *Gilbert v. Smith, supra; Graham v. Leck, supra*; I.C. § 42–222(2); 78 Am. Jur.2d *Waters* § 338 (1975). In other words, under those doctrines the priority date of the original appropriator is lost and a subsequent appropriator of those abandoned or forfeited waters does not obtain title thereto dating back to the original user's priority date.

■ The doctrine of forfeiture is inconsistent with appellants' argument that they enjoy the right to the disputed waters while retaining the original priority dates established in the Jobe Adams decree. As we view the record, the cause was tried on the theory that the Searses had established a right to the disputed water with the original priority dates of 1872, 1873 and 1879, and not that they had established this right with the priority date of 1944.[1]

At no point in the briefs on appeal or in the oral argument presented to this Court did the Searses argue that they secured a constitutional right appropriation to the water with a 1944 priority date. Hence, we do not decide whether the 25 inches of 1879 water was forfeited by the Berrymans and subsequently appropriated by the Searses in 1944.

### III.

Lastly, the Searses contend that they are entitled to the entire 51 inches of disputed water under the doctrine of estoppel by laches. Conversely, the Berrymans argue that such doctrine does not dispossess them of any of the disputed water.

As hereinabove stated in connection with appellants' other theories, the trial court

found that only the Berrymans' 1879 priority water was consistently used by the Searses and that finding being supported by substantial, albeit conflicting, evidence will not be disturbed on appeal. Hence, the doctrine of estoppel by laches applies here, if at all, only to the 25 inches of the 1879 priority water.

■ The doctrine of laches is a creation of equity and is a species of equitable estoppel. "Long and continuous knowing acquiescence in another's use and enjoyment of a property or privilege may preclude one from subsequently asserting his claim." *Hillcrest Irr. Dist. v. Nampa Etc. Irr. Dist.,* 57 Idaho 403, 411, 66 P.2d 115, 118 (1937). However, "[l]apse of time is not alone sufficient to defeat a right on the ground of laches. It must be shown that the [claimant] has been misled, to his injury, by the failure of the [holder of the right] to assert its right earlier." *Mountain Home Irr. Dist. v. Duffy,* 79 Idaho 435, 443, 319 P.2d 965, 969 (1957).

Although appellants Searses rely upon *Hillcrest Irr. Dist. v. Nampa Etc. Irr. Dist., supra,* in which this Court found the existence of the elements of laches, nevertheless it was there stated:

"... even though appellant's title may have been originally questionable or uncertain, nevertheless, respondents have stood by, with *full knowledge* of all the facts, and for more than twenty years have allowed appellant to proceed on the theory that it had valid title to these water rights and a legal right to have the water diverted from the New York Canal; and in the meanwhile has *incurred large indebtedness* on the strength of its title...." *Id.* at 408–09, 66 P.2d at 117 (Emphasis added).

In *Hillcrest,* the elements of long and knowing acquiescence, as well as reliance to the injury of the claimant were clearly present.

In *Mountain Home Irr. Dist v. Duffy, supra,* the claimant asserted title to the disputed water under the doctrine of estoppel by laches based upon 40 years of use

---

1. The trial court found that the Searses began using the Berrymans' 25 inches of 1879 water in 1939. The forfeiture period would therefore run from 1939 to 1944. In 1944 the 25 inches would have reverted to the State and become available for appropriation by the Searses.

and the expenditure of large sums of money by the claimant. However, there the court held that the expenditures by the claimant did not establish the requisite detrimental reliance. *see also Almo Water Company v. Darrington*, 95 Idaho 16, 501 P.2d 700 (1972).

In the instant case, there must have been shown not only a long and continuous *knowing* acquiescence by respondents Berrymans of Searses' use of the 25 inches of 1879 water, but in addition thereto, there must have been shown reliance by the Searses to their detriment upon the Berrymans' continued relinquishment of their rights to the 25 inches of water. Otherwise, the Berrymans cannot be held to be estopped by laches from now claiming the disputed 25 inches of water.

The trial court here made no finding regarding the Berrymans' knowledge that they were not receiving water from the watermaster in accord with their deeded right. Such a finding might be implied on the basis that the Berrymans were entitled to 145 inches, being 94 inches of decreed water and 51 inches of deeded water. The record appears to indicate that the Berrymans never claimed to have used more than 120 inches, and it would appear, therefore, that they were aware that the 25 inches of water was not being delivered. In their brief, however, the Berrymans emphatically declare otherwise and we do not rule on this point.

Further, the trial court made no finding concerning any expenditures, improvements or change of position by the Searses which would constitute detrimental reliance on their continued use of the 25 inches of water. These factual issues were material to the disposition of the cause under the theory of estoppel by laches. Thus, we deem it necessary that the cause be remanded for findings and conclusions on those issues.

The orders and judgment of the trial court are affirmed in part, reversed in part and remanded for further proceedings consistent herewith. No costs allowed.

BAKES, C. J., and McFADDEN and DONALDSON, JJ., concur.

BISTLINE, J., concurring.

I concur with the opinion of the majority but feel it necessary to point out that the Sears alleged forfeiture in their original complaint, but then inexplicably omitted that theory in their amended complaint, *which was submitted after trial.* The evidence at trial suggested a forfeiture, and indeed the trial court's findings strongly suggest that a forfeiture has occurred:

"18. That plaintiffs have consistently used all of the 1872 and 1873 rights decreed to Sadie Beecher in the Jobe Adams' decree, except for 26 inches, for irrigation purposes during the irrigation season of each year, from the year 1939 to the present.

"19. That such use by plaintiffs, or their predecessors, has continued for a period of more than thirty-seven (37) years.

"20. That the flow of such water so used by plaintiffs is more particularly described as follows:

(1) .36 of a cubic foot, or 18 inches, with a priority of April 30, 1872;

(2) .34 of a cubic foot, or 17 inches, with a priority date of April 30, 1873;

(3) 1.2 of a cubic foot, or 60 inches, with a priority date of April 30, 1879;

(4) That such water is legally described as the water allocated to Sadie Beecher in the Jobe Adams' decree of 1928, as recorded in the office of the County Recorder of Cassia County, Idaho."

The further finding that "defendants Berryman ... made no objection during the years that plaintiffs have received and beneficially used the water" is additional evidence of a forfeiture.[1] If on remand the district court should fail to find the requisite detrimental reliance necessary to support its theory of equitable estoppel, the Sears should be given leave to amend their amended complaint, pursuant to I.R.C.P. 15(b), to conform to the evidence adduced at trial, which indicates that a forfeiture of the 25 inches may indeed have occurred.

---

1. It is not clear from the record whether the trial court actually believed that the Sears' use of this 25 inches was *exclusive.* This should be clarified on remand.

Of course, the Sears' *priority* date to the water under such a forfeiture would necessarily date from the end of the 5 year forfeiture period, while under a theory of equitable estoppel the original priority date would apply.

I also feel constrained to observe that the majority makes an entirely unwarranted assumption in stating that "the doctrine of forfeiture is inconsistent with appellant's argument that they enjoy the right to the disputed waters while retaining the original priority dates established in the Jobe Adams decree," and that "the cause was tried on the theory that the Sears had established a right to the disputed water with the original priority dates of 1872, 1873 and 1879, and not that they had established this right with the priority date of 1944." The assumption is that the Sears are claiming a right with "priority dates established by the Jobe Adams decree." In fact, neither their original complaint nor their amended complaint claimed a specific priority date at all, and they claim no specific priority date on appeal. References to priority dates are given only to describe the particular water claimed. There is no separate assertion of a right to particular priority dates.[2] The Sears *do* claim, repeatedly and insistently, that they began appropriating the 51 inches in question in *1939*, and that they have applied such water to a beneficial use since that time. The evidence produced at trial was directed at establishing this fact. *If* the Sears were arguing that they had, through forfeiture, obtained rights to the water with a priority date established by the Jobe Adams decree, I would have to concur with the statement by the majority. Such a claim would be internally contradictory and subject to being stricken. However, no such claim is made and it should be made clear that, on remand, the court is free to consider the effects of a forfeiture. Hence my separate concurrence.

2. In their amended complaint, submitted *after* trial, the Sears do state that they have adversely used "all said water right with a priority as of the years 1872, 1873 and 1879 ...." This reference to priority dates is ambiguous, but *may* be interpreted as a claim to water which *includes* a claim to those priority dates. While

it does not appear to be in the interests of justice to so interpret the phrase, even such an interpretation would not preclude a forfeiture from being found under the other allegations in the Sears' amended complaint. Certainly the Sears do not claim a right to water with those dates, *and only those dates.*