690 P.2d 916

**Steven M. CROW and Cynthia Crow, husband and wife, Plaintiffs-Respondents,**

v.

**Ronald CARLSON, Watermaster of Water District No. 1 of the State of Idaho, Defendant-Respondent,**

**and**

**Ray Gordon and Mary Jean Gordon, husband and wife, and any other unknown parties who claim any interest in water rights which would be adverse to a grant of 120 inches of Fox Creek with a priority date of 1890 for use in the SW ¼ of Section 27, Township 4 North, Range 45 East, Boise Meridian, Defendants-Appellants.**

No. 14946.

Supreme Court of Idaho.

Oct. 31, 1984.

462

Ray W. Rigby, Rexburg, for appellants.

Lynn Hossner, St. Anthony, for plaintiffs-respondents.

Jim Jones, Atty. Gen., and Lynn E. Thomas, Sol. Gen., State of Idaho, Boise, for defendants-respondents.

SHEPARD, Justice.

This is an appeal from a judgment quieting title to water rights in the plaintiffs-respondents Crow. The dispute involves certain water rights in Fox Creek north of Victor, Idaho, in the vicinity of Rexburg. In 1910, 120 miner's inches of the waters of Fox Creek were decreed to one Michael Byrne, with a priority date of 1890. That

water was decreed as appurtenant to 240 acres of land, 160 of which were in Section 27 and are presently owned by the Crows, and 80 acres of which were in Section 26 and are presently owned by defendants-appellants Gordon. Both parcels lie in Township 4 North, Range 45 East, Boise Meridian. The trial court awarded the full 120 inches of water to the Crows and denied the Gordons' claim to any portion of the water. We reverse and remand.

The 1910 decree resulted from the case of Rexburg Irrigation Co., et al. v. Teton Irrigation Co., et al., wherein the district court of Freemont County adjudicated the rights of all persons taking water from the upper Snake River and its tributaries. That portion of the decree dealing with Michael Byrne awarded 120 inches of water with a priority date of 1890, for use on 240 acres of Byrne's property described as follows:

SW ¼ of Sec. 27, S. ½ of SW ¼ of Sec. 26, T. 4 N., R. 45 E., B.M., containing 240 acres.

The Crows sought to quiet title to the entire 120 inches of water, asserting that they are the successors in title of Byrne to the 160 acres in Section 27; that Byrne never owned the 80 acres in Section 26; that in any case, Byrne never used any of the 120 inches of water on the 80 acres in Section 26; and that therefore the Gordons have no right to any of the decreed water.

Fox Creek is a tributary of the Teton River, which in turn is a tributary of the Snake River. Fox Creek has in most years an adequate supply of water for the irrigation needs of the farmers in that area. Fox Creek Irrigation Company was formed after the 1910 Byrne decree and is a cooperative canal system operated by the farmers who use the Fox Creek water. Traditionally, in those years when the water was low in Fox Creek, the irrigation company, in conjunction with the state and local watermasters, arranged an equitable distribution of the water, which arrangement appears to have been satisfactory to everyone. Although the owners of the earlier decreed water have priority, there have been only a few times when they have had to assert the priority of their decrees in order to have sufficient water to irrigate. For example, the evidence indicated that in 1942, one Riggan, the then owner of the 160 acres in Section 27, asserted his earlier priority water rights. At that time the then owner of the 80 acres in Section 26 lacked sufficient water for irrigation and special concessions were then made to obtain water for that Section 26 property. In 1957, Gordon was farming his own property in Section 26, and also the Crow property in Section 27 by way of a leasehold, and at that time the earlier priority waters were asserted by Gordon. In 1978, Robert Bean, as the lessee of the Section 27 Crow property, and Gordon, as owner of the Section 26 property, both asserted a right to the early priority decreed water. There were not then 120 inches of water in Fox Creek, and therefore the watermaster split the water proportionately between the Crow Section 27 property and the Gordon Section 26 property, according to the percentage each property represented of the total property described in the Byrne decree.

Further evidence at trial may be summarized as follows. Robert Bean is the lessor of the Crow Section 27 property and the grandson of Riggan, who bought the Section 27 property from Michael Byrne. Riggan farmed the property until 1945, and Bean grew up helping farm that property. Bean indicated that no one ever actually measured the water going to the Section 27 property, since it had the oldest decree, and no one challenged the taking of the water. Bean stated that when Gordon called for water in 1978, there was plenty, and that he, Gordon, then got twice the amount Gordon now claims to be his under the 1910 decree. To Bean's knowledge, neither his grandfather nor Byrne ever farmed or owned the Gordon property. Kay, an officer of the Fox Creek Irrigation Company, indicated that the old Byrne decree was never called, and that the company seldom filled the old decrees as such, since people just cooperated. Moulton, a longtime resident of the area, indicated that his uncle

owned the Section 27 property, that his uncle never abandoned the 120 inches of water, and that Gordon never demanded any of it. Stone, another resident of the area, indicated that Riggan asserted the water priority right in 1941 or 1942, but that Riggan did allow some water to go to Gordon's property in that year. Wilson, the local watermaster, testified that in 1963 or 1965, he began splitting the water, sending 40 inches to Gordon and 80 inches to Crow, under his interpretation of the 1910 Rexburg decree. Plaintiff Crow testified that he has used the entire 120 inches of water on the Section 27 property since buying the land. Defendant Gordon testified that he owns the Section 26 property described in the Byrne decree, that he and his predecessors have always asserted and received their share of the 120 inches, although their right to early priority water never was questioned because the supply was usually sufficient to cover the needs of all concerned. The watermaster at the time of trial, O'Brien, testified that he was then delivering 40 inches of water to Gordon.

The trial court held that the 1910 Rexburg decree was res judicata as to all matters determined therein, and stated, "This court must assume that in 1890 Michael Byrne had some interest in property in Section 26." The court found that Byrne never sold or conveyed any water right which was appurtenant to land in Section 26. The court further found that, although the successive owners of the Section 27 land had always demanded the water allotted in the 1910 decree, they obtained their water through the canal company and "[s]ince they obtained their water from the canal the ownership of a decreed water right has been of no significance in an ordinary year." The court did not find any instance in which the Gordons were denied sufficient water to irrigate their property.

■ Idaho Const. art. 15, § 3 provides, in pertinent part, "The right to divert and appropriate the unappropriated waters of any natural stream to beneficial uses, shall never be denied, except that the state may regulate and limit the use thereof for power purposes. Priority of appropriations shall give the better right as between those using the water ...." *See also,* I.C. § 42–103, codifying the doctrine of prior appropriation; and I.C. § 42–106, providing that, as between appropriators, first in time is first in right. A water right is tantamount to a real property right, and is legally protected as such. *Nettleton v. Higginson,* 98 Idaho 87, 558 P.2d 1048 (1977); *Neilson v. Parker,* 19 Idaho 727, 115 P. 488 (1911); I.C. § 55–101.

■ In the instant case the trial court noted that under the law of prior appropriation, and pursuant to the 1910 Rexburg decree, "[t]he appropriator, named in this decree became entitled, as of a date fixed therein, to use water in the amount named from the stream named for irrigation of the property designated." That right carried priority over other appropriations which were perfected on later dates, but the right was junior to appropriations established prior to it. *Jenkins v. State, Dept. of Water Resources,* 103 Idaho 384, 647 P.2d 1256 (1982); *Martiny v. Wells,* 91 Idaho 215, 419 P.2d 470 (1966); *Cottonwood Water & Light Co. v. St. Michael's Monastery,* 29 Idaho 761, 162 P. 242 (1916).

■ The 1910 Rexburg decree is conclusive proof of diversion of the water, and of application of the water to beneficial use, *i.e.,* the decree is res judicata as to the water rights at issue herein. *Morgan v. Udy,* 58 Idaho 670, 79 P.2d 295 (1938); *Masterson v. Pacific Livestock Co.,* 144 Or. 396, 24 P.2d 1046 (1933); *O'Brien v. King,* 41 Colo. 487, 92 P. 945 (1907). Our holding of the presumption of accuracy of the decree is in keeping with the judicial policy of deterring the reopening of judgments long after cases are decided and the files are closed. *See Water Supply & Storage Co. v. Larimer & Weld Irrigation Co., et al.,* 24 Colo. 322, 51 P. 496 (1897). Our holding is also consistent with the ruling of the trial judge, in which he stated that a decree affixing water rights and establishing priorities is binding on all parties, and that such decree fixes the dates of priority *and*

*the land to which the water is appropriated.*

The trial judge found that the appropriator of a water right could use it on the ground for which it was appropriated or on other grounds, and that a water right is essentially a personal right which is not necessarily transferred by a conveyance of the property to which the right appertains. We disagree. I.C. § 42–220 provides that "all rights to water confirmed under the provisions of this chapter, or by any decree of court, shall become appurtenant to, and shall pass with a conveyance of, the land for which the right of use is granted." Such is a codification of the law as it has existed since 1903. *See* 1903 Idaho Sess. Laws, p. 233, § 9; R.C. & C.L. § 3262 (1908); C.S. § 5580 (1919); I.C.A. § 41–214 (1932).

Hence, we confirm the validity of the 1910 decree and hold that the water right at issue herein was appropriated for the lands in Sections 26 and 27, as described in the Rexburg decree, and that the water so decreed was beneficially applied to those respective parcels by the then appropriator Byrne. It would be unwise and unjust to overturn a decree imposed 74 years ago which awarded water rights with a priority of nearly 100 years ago. To the extent that the trial court's ruling is inconsistent therewith, it is reversed. Having so held, we need not reach the question of whether the judge properly admitted evidence to contradict the language of the 1910 Rexburg decree.

■ Accepting the validity of the Rexburg decree, the water right in question here is in some proportion appurtenant to the Section 26 Gordon land, unless that right has at some time been transferred to other property, abandoned, or negated in some other way. We find no evidence in the record indicating that the right to use the water on the Section 26 Gordon property has been lost, under the facts as found by the trial judge. The trial judge found that Byrne never conveyed either the land in Section 26 or any water right appurtenant thereto. Therefore, for plaintiff Crow to prevail, Byrne or his successors must have lost the Section 26 right in some other way, such as through adverse possession, prescriptive use, forfeiture, or abandonment.

■ To gain title to another's water right by adverse possession or prescriptive use,[1] the adverse claimant must demonstrate that his use was 1) open and notorious; 2) hostile to the claim of the rightful owner; 3) exclusive of the use and needs of the rightful owner; 4) continuous and uninterrupted; 5) under claim of right; 6) for the period prescribed by statute, *i.e.*, five years. *Mountain Home Irrigation District v. Duffy*, 79 Idaho 435, 319 P.2d 965 (1957); *Linford v. G.H. Hall & Son*, 78 Idaho 49, 297 P.2d 893 (1956). The party claiming to have acquired the prescriptive right has the burden of demonstrating that he has satisfied all of the necessary elements. *Sears v. Berryman*, 101 Idaho 843, 623 P.2d 455 (1981); *Mountain Home Irrigation District v. Duffy, supra.*

■ To establish a claim of prescriptive or adverse use, the party claiming to have acquired that right must show that he has used the water during each of the consecutive irrigation seasons of a five-year period when it was *actually* needed by the prior owner. *Sears v. Berryman, supra; Mountain Home Irrigation District v. Duffy, supra.*

■ In the instant case, the trial court found that since 1910, everyone requesting water from Fox Creek had been given an adequate supply and that the supply of water was inadequate enough to trigger

---

1. A water right has been characterized as real property. *Bennett v. Twin Falls Co.*, 27 Idaho 643, 150 P. 336 (1915); *Hard v. Boise City Irrigation and Land Co.*, 9 Idaho 589, 76 P. 331 (1904); I.C. § 55–101. We note, however, that a water right does not have all the attributes of a real property interest, in that the water right may be conveyed without a complete legal description and lost through non-use. Therefore, although adverse possession is conducive to a land interest and prescriptive use results in an easement or other appurtenance, since a water right could conceivably come under either category, we treat it under both doctrines here.

the 1890 Byrne decree priorities only three times in the years between the issuance of the Rexburg decree and the filing of this lawsuit. Hence, no occasion arose for any of the owners of the Section 27 property to demand water, *to the exclusion of* any other person, for a period of five consecutive years. The water right at issue here was therefore not lost by adverse possession or prescriptive use.

Statutory forfeiture of a water right is based upon I.C. § 42–222(2), which provides that "[a]ll rights to the use of water acquired under this chapter or otherwise shall be lost and forfeited by a failure for the term of five (5) years to apply it to the beneficial use for which it was appropriated . . . ." Forfeitures are not favored in the law, and clear and convincing proof is necessary to support a claim of forfeiture. *Jenkins v. State, Dept. of Water Resources*, 103 Idaho 384, 647 P.2d 1256 (1982); *Gilbert v. Smith*, 97 Idaho 735, 552 P.2d 1220 (1976). The record contains no clear and convincing evidence that the water represented by the 1910 decree was not applied to beneficial use on the Section 26 land for a continuous period of five years. Hence, we hold that forfeiture has not been established.

As we held in *Jenkins v. State, Dept. of Water Resources, supra,* the common law doctrine of abandonment is still viable in Idaho and is distinguished from statutory forfeiture. As stated in *Sears v. Berryman,* 101 Idaho 843, 847, 623 P.2d 455, 459 (1981):

"Abandonment is a common law doctrine involving the occurrence of (1) an intent to abandon and (2) an actual relinquishment or surrender of the water right. Forfeiture, on the other hand, is predicated upon the statutory declaration that all rights to use water are lost where the appropriator fails to make beneficial use of the water for a continuous five year period. I.C. § 42–222(2)."

*Accord Gilbert v. Smith,* 97 Idaho 735, 552 P.2d 1220 (1976); *Carrington v. Crandall,* 65 Idaho 525, 147 P.2d 1009 (1944).

While under the doctrine of forfeiture mere non-use of water for a sufficient period of time may be sufficient to bring about a loss of water rights, abandonment is more difficult to prove than forfeiture, in that mere non-use does not result in abandonment. Rather, the party alleging abandonment must prove by clear and convincing evidence that the owner of the water right *intended* to abandon that right. *Jenkins, supra.* The record contains no evidence, and there is no finding by the trial court, that Gordon or his predecessors in interest intended to abandon the water right to the Section 26 land decreed by the 1910 Rexburg decree. Rather, the evidence indicates that insofar as Gordon is concerned, he always requested and always received adequate water for the Section 26 property. We hold there has been no abandonment.

It is asserted by Gordon that the Section 26 land described in the Rexburg decree and presently owned by Crow constitutes one-third of the entire property described in the Rexburg decree as belonging to Byrne, and therefore he, Gordon, is entitled to one-third of the decreed 120 inches, *i.e.,* 40 miner's inches of water for his Section 26 property. The trial court made no factual finding or legal conclusion as to what proportions of the Byrne land described in the 1910 decree are now owned by each of the parties to this litigation. Hence, we remand to the trial court for apportionment of the water right decreed in the 1910 Rexburg decree. The trial court is instructed to divide the water between the Crow and Gordon properties, in proportion to the share that each represents of the property described as belonging to Byrne in the Rexburg decree. As was held in *Hunt v. Bremer,* 47 Idaho 490, 493, 276 P. 964, 965 (1929), "A division of a tract of land to which water is appurtenant, without segregating or reserving the water right, works a division of such water right in proportion as the land is divided," *citing Russell v. Irish,* 20 Idaho 194, 118 P. 501 (1911).

Reversed and remanded. Costs to appellants. No attorney's fees on appeal.

DONALDSON, C.J., and BAKES, BISTLINE and HUNTLEY, JJ., concur.