831 P.2d 527

In the Matter of Application for Permit No. 65–12842 and Application for Transfer of Water Right No. 65–03104.

George DOVEL, Petitioner–Appellant,

v.

Steve DOBSON and/or Tom Oliver; Idaho Department of Water Resources, Respondents.

No. 19007.

Supreme Court of Idaho, Boise, February 1992 Term.

April 1, 1992.
Rehearing Denied June 1, 1992.

**60**

Richard B. Eismann, Nampa, for appellant, Dovel. Richard B. Eismann argued, Nampa.

Jack C. Riddlemoser, Meridian, for respondents, Steve Dobson and Tom Oliver.

Larry J. EchoHawk, Atty. Gen., Phillip J. Rassier, Deputy Atty. Gen., for respondent, Idaho Dept. of Water Resources. Phillip J. Rassier argued.

JOHNSON, Justice.

This is a water rights case concerning the transfer of one water right and a permit for another water right. The primary issue presented is whether there is substantial and competent evidence to support the decision of the director (the director) of the Department of Water Resources (the department) approving the transfer and the permit.

We affirm the decision of the director. We also conclude that the director imposed sufficient conditions on the transfer and the permit to protect prior appropriators and the local public interest. We do not address the portion of the director's order allowing the diversion of the same amount of water upon the transfer, because this issue is not properly before us.

I.

THE BACKGROUND AND PRIOR PROCEEDINGS.

Steve Dobson and Tom Oliver (referred to jointly as Dobson), own farmland adjacent to Porter Creek, a tributary of the Payette River. The Dobson property consists of 504 acres, of which approximately 135 acres are irrigated. Dobson has a decreed right to divert Porter Creek water (the Porter Creek water right) to irrigate ninety-six of the acres farmed. There is also a decreed right to divert water from the Payette River for application to the ninety-six acres.

Porter Creek is primarily a snowmelt-fed stream. In the springtime, Porter Creek experiences an abundance of water that diminishes throughout the summer and into the fall. Dovel is a user of Porter Creek water, with a right junior to Dobson's right. Dovel's point of diversion lies upstream from Dobson's point of diversion.

In May, 1988, Dobson applied to the department for a new water permit (the permit) to divert .84 cubic feet per second (cfs) for irrigation purposes and a transfer (the transfer) of the Porter Creek water right appurtenant to eighteen acres in order to supply water for property not covered in the original water right.

The Porter Creek water right covers three different fields, totalling ninety-six acres—a seventy-eight acre field (the first field), a twelve acre field (the second field), and a six acre field (the third field).

Dovel objected to the transfer alleging that a portion of the Porter Creek water right had been forfeited and that the transfer would result in an enlargement of the existing right. Dovel also objected to the issuance of the permit, contending that there was an insufficient water supply to allow the permit and that the permit would reduce the water available to existing water rights. Dovel also urged that both the transfer and the permit were not in the local public interest.

After a hearing, the director approved both the permit and the transfer. In approving the permit, the director found that there are periods in most years when sufficient water is available to satisfy the requested diversion without injuring senior water rights. The director found that existing water rights would not be injured through proper delivery of water by the watermaster.

In approving the transfer, the director found that the consumptive use appurtenant to the third field had been forfeited by nonuse but approved the transfer of the water right appurtenant to the second field. The director did not reduce the 1.6 cfs diversion, which had been historically diverted for the three fields. The director concluded that the transfer would not change the amount of use authorized by the water right and ordered that a measuring device be placed at the point of diversion to insure that there would be no injury to senior water rights.

Dovel sought review by the district court. The district judge concluded that the director's decision was neither clearly erroneous nor characterized by abuse of discretion. Dovel appealed to this Court.

## II.

### STANDARD OF REVIEW.

This appeal involves two separate issues—the approval of the transfer and the approval of the permit. Our standard of review is the same with regard to each of these issues.

I.C. § 42–1701A(4) directs that judicial review of a final decision of the director shall be governed by I.C. §§ 67–5215 and 67–5216. In an appeal from an agency decision, our review is limited to the record. *St. Alphonsus Med. Ctr. v. Canyon County*, 120 Idaho 420, 816 P.2d 977 (1991). We review the agency's decision independently of the district court's decision. *Ferguson v. Board of County Com'rs*, 110 Idaho 785, 718 P.2d 1223 (1986); *First Interstate Bank of Idaho, N.A. v. West*, 107 Idaho 851, 693 P.2d 1053 (1984).

I.C. § 67–5215(g) governs the scope of our review:

(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(1) in violation of constitutional or statutory provisions;

(2) in excess of the statutory authority of the agency;

(3) made upon unlawful procedure;

(4) affected by other error of law;

(5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or,

(6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

A reviewing court may reverse the agency decision only under these limited circumstances. *State Ex Rel. Richardson v. Pierandozzi*, 117 Idaho 1, 784 P.2d 331 (1989).

In essence, Dovel asserts that the director's decision is clearly erroneous in

view of the evidence. In order for us to uphold an agency's decision under this clearly erroneous standard we must conclude that the record contains "some reliable, probative, and substantial evidence in support of its position." *Idaho County Nursing Home v. Department of Health & Welfare*, 120 Idaho 933, 821 P.2d 988 (1991).

■ A finding of fact without any basis in the record would be clearly erroneous. *Tappen v. Department of Health & Welfare*, 98 Idaho 576, 570 P.2d 28 (1977). Also, a finding of fact lacking substantial and competent evidence to support it is clearly erroneous. *Hubbard v. Canyon Cty. Com'rs*, 106 Idaho 436, 680 P.2d 537 (1984). In order to uphold an agency's finding, we must find more than a mere scintilla of evidence. *Idaho State Ins. Fund v. Hunnicutt*, 110 Idaho 257, 715 P.2d 927 (1986).

■ If we cannot find any support for the agency's decision in the record, we can reverse the decision or remand the case for further proceedings. *Idaho County Nursing Home v. Department of Health & Welfare*, 120 Idaho 933, 821 P.2d 988 (1991); *Love v. Board of County Com'rs*, 105 Idaho 558, 671 P.2d 471 (1983).

### III.

### THE TRANSFER.

The transfer of the Porter Creek water right is governed by I.C. § 42-222(1). The pertinent part of this statute states:

(1) Any person, entitled to the use of water whether represented by license issued by the department of water resources, by claims to water rights by reason of diversion and application to a beneficial use as filed under the provisions of this chapter, or by decree of the court, who shall desire to change the point of diversion, place of use, periods of use or nature of use of all or part of the water, under the right shall first make application to the department of water resources for approval of such change...

The director of the department of water resources shall examine all the evidence and available information and shall approve the change in whole, or in part, or upon conditions, provided no other water rights are injured thereby, the change does not constitute an enlargement in use of the original right, and the change is consistent with the conservation of water resources within the state of Idaho.

■ Dovel challenged the proposed transfer alleging that a portion of the water right had been forfeited through nonuse and that the transfer constituted an enlargement of the original right. Forfeiture of water rights are governed by I.C. § 42-222(2) which states in part:

(2) All rights to the use of water acquired under this chapter or otherwise shall be lost and forfeited by a failure for the term of five (5) years to apply it to the beneficial use for which it was appropriated and when any right to the use of water shall be lost through nonuse or forfeiture such rights to such water shall revert to the state and be again subject to appropriation under this chapter.

Pursuant to this statute, an appropriator who fails to apply the water right beneficially for a period of five (5) consecutive years loses all rights to use such water, regardless of intent. *Sears v. Berryman*, 101 Idaho 843, 623 P.2d 455 (1981); *Gilbert v. Smith*, 97 Idaho 735, 552 P.2d 1220 (1976).

In *Jenkins v. Department of Water Resources*, 103 Idaho 384, 647 P.2d 1256 (1982), the Court reiterated some of the basic principles relating to forfeitures:

Statutory forfeiture is based upon the legislative declaration in I.C. § 42-222(2) that water rights may be lost if they are not applied to a beneficial use for a period of five continuous years.... [I]f use of the water right is resumed after the five year period, but before any third parties make a claim in the water, then the courts will decline to declare a forfeiture.

Forfeitures are not favored, and clear and convincing proof is required to find a forfeiture.

*Id.* at 389, 647 P.2d at 1261 (citations omitted).

At the beginning of the hearing in this case, the hearing officer informed the parties:

> Now the issues that have been determined in the prior conference include the following:
>
> > In connection with the transfer the validity of the right is an issue; more specifically whether the right has been lost through nonuse.

The exact amount of the Porter Creek water right alleged to have been forfeited had not been disclosed prior to the hearing. It appears that Dovel's argument was that some or all of the water right had been lost due to forfeiture. At the hearing, there was uncontroverted evidence that the third field had not been irrigated for more than five years. Thus, the director correctly ruled that the water right for those six acres had been forfeited.

With regard to Dovel's claim that there had been a forfeiture of the water appurtenant to the twelve acres in the second field, the director found that this field had been periodically irrigated within the five years prior to the hearing. The director also found:

> 16. [The Porter Creek water right] was decreed on January 21, 1986 for the diversion of 1.6 cfs of water for the irrigation of 96 acres with a priority date of January 1, 1883.
>
> \* \* \* \* \* \*
>
> 20. Testimony from both [Steve Dobson] and [Dovel] indicated the full rate of 1.6 cfs of water has been diverted by [Dobson] when the water has been available.

In finding that only the water right to the third field had been forfeited, the director implicitly found that water had been beneficially applied to the remaining ninety acres in the first and second fields. The director's decision did not change the authorized diversion rate of 1.6 cfs.

In a letter protesting the application for the transfer, Dovel stated:

> a. All or part of the 18 acres to be [transferred] in Sections 11 and 12 have actually not been irrigated for approximately the past 40 years. Back when they were irrigated, other acres included in the decreed right were not. The total of 96 acres in the decree include "either or" acres and it is not possible to irrigate all of those acres with the 1.6 cfs water right which is conveyed in a leaky marginal ditch approximately two miles in length.

Dovel reiterated these allegations at the hearing and asserted that "historically no more than eighty acres at a time has ever been irrigated" with the water right. Much of Dovel's testimony centered on the fact that while the full 1.6 cfs under the Porter Creek water right had been diverted, because of ditch losses and other factors, it was impossible to water the full ninety-six acres.

Steve Dobson testified that the twelve acres in the second field had been irrigated within the five years prior to the hearing. Alfred Wolfgram, who owned the three fields from 1976 until he sold them to Dobson in 1988, testified that he irrigated the ninety acres contained in the first and second fields each year except 1987. This testimony constituted substantial and competent evidence to support the director's decision that there had not been a forfeiture of the water appurtenant to the first and second fields.

■ Dovel also objected to the transfer as being against the local public interest in violation of I.C. § 42–203A(5)(e). This statute defines the "local public interest" as "the affairs of the people in the area directly affected by the proposed use." *See also Shokal v. Dunn,* 109 Idaho 330, 707 P.2d 441 (1985). Dovel's argument stems from the fact that a local road has been flooded on several occasions by the water appropriated under water right No. 65–3104. We fail to understand the logic of Dovel's argument. The director correctly found that the transfer did not conflict with the local public interest.

■ We do not address whether the director was correct in allowing the diversion of 1.6 cfs with the transfer. In his exceptions to the proposed decision of the director, Dovel argued that the appropriate rate of diversion was .02 cfs per acre. At that point Dovel contended that only 67.4 acres had water rights and that the water rights appurtenant to balance of the ninety-six acres had been forfeited. Dovel did not suggest that the rate of diversion should be less than .02 cfs, however.

Likewise, in his brief on appeal to this Court, Dovel calculated the rate of diversion at .02 cfs per acre. Therefore, we will not consider whether the director should have reduced the diversion of 1.6 cfs for ninety acres. Using .02 cfs for ninety acres exceeds the amount allowed by the director.

## IV.

### APPROVAL OF THE WATER PERMIT

■ Dovel objected to the issuance of a water permit asserting that there was an insufficient water supply. He urged that the permit would reduce the water available to existing water rights and that the issuance of the water permit was not in the local public interest.

In approving the application for the water permit, the director found:

*Availability of Water*

12. Porter Creek is primarily a snow-melt-fed stream which has high rates of flow early in the irrigation season but low rates of flow late in the irrigation season. During most years there are periods when flows in Porter Creek exceed the existing rights thereto and are available for diversion and use. On the other hand, there are periods during each irrigation season when the flow of the creek can fill only the senior irrigation water right on the stream.

*Impact on Existing Water Rights*

13. Flows diverted under the application will not impact the amount of water available to fill senior water rights on Porter Creek if the watermaster delivers water to the senior water rights in accordance with priority before junior rights are filled.

*Local Public Interest*

14. The protestant contends the approval of the application would be a detriment to the local public interest because flows in the conveyance ditch have historically flooded a county road crossed by the ditch. This alleged local public interest concern is applicable to both the application for permit and the application for transfer.

These findings are based upon substantial and competent evidence. Thus, we affirm the director's approval of the water permit. The evidence indicated that during a normal water year, there was sufficient water to fill all existing rights and also those rights granted by the permit. It would be the responsibility of the watermaster to insure that senior rights were not injured. Dovel's objections are not well founded. Further, Dovel failed to make the requisite showing that the transfer was not in the local public interest.

## V.

### THE DIRECTOR IMPOSED SUFFICIENT CONDITIONS TO PROTECT PRIOR APPROPRIATORS AND THE LOCAL PUBLIC INTEREST.

■ Dovel asserts that the director did not impose sufficient conditions on the approval of the transfer and the permit to protect prior appropriators and the local public interest. We disagree.

In approving the permit, the director imposed the following conditions:

1. The new water right is subject to all prior water rights.
2. Dobson must assure the department that the system for diverting and conveying the water is adequate.
3. A measuring device and lockable controlling works must be installed to provide the watermaster suitable control.
4. Use of the water is subject to the control of the watermaster.
5. Proof of construction of the works and application of water to beneficial

use had to be submitted by May 1, 1990.

6. The issuance of the permit did not grant any right-of-way or easement across the land of another.

In approving the transfer, the director imposed the following conditions:

1. The place of the use of the transferred water right shall not exceed ninety acres, as described on the map that was part of the application for transfer.

2. The maximum annual consumptive use volume authorized for diversion under the transfer shall not exceed 225 acre-feet, or two and one-half acre-feet per acre. This was a reduction from 240 acre-feet for ninety-six acres.

3. The maximum rate of diversion shall not exceed 1.6 cfs.

4. Water shall be diverted under this right only during periods when diverted flows are applied to a beneficial use on the specified place of use.

5. An acceptable measuring device and lockable controlling works shall be installed on the diverting works in a manner that will provide the watermaster suitable control of the diversion.

6. Use of water under this right is subject to the control of the watermaster.

These conditions protected the rights of prior appropriators. The permit was subject to all prior water rights.

In *Shokal v. Dunn,* the Court said that what public interest requires is committed to the department's sound discretion. 109 Idaho at 339, 707 P.2d at 450. We conclude that the director did not abuse this discretion in fashioning these conditions.

## VI.

## CONCLUSION.

We affirm the director's decision and award costs on appeal to respondents.

BAKES, C.J., and REINHARDT, J. pro tem., concur.

BOYLE, J., fully concurred prior to his resignation March 31, 1992.

McDEVITT, Justice, dissenting:

I must dissent from the Court's holding that there was "substantial competent evidence" to support the director's decision that there "had not been a forfeiture of the water right appurtenant to the first and second fields."

The Court relies on a bold assertion that Dobson, who had no knowledge of what had occurred prior to 1988 when he acquired the property that a portion of the land had been irrigated in the five years preceding 1988. The Court further relies on a similar assertion by Wolfgram (Dobson's immediate predecessor-in-interest), which Wolfgram subsequently recanted and acknowledged that the ASCS map (exhibit I) reflects what "was farmed" (far fewer acres).

The Court would reply that I am "weighing" the evidence. In truth and in fact, I have desperately reviewed this record to find "some" evidence to weigh. Our very existence depends on water, claims to our water should require greater scrutiny than the director afforded this transfer and the adverse claims entered.

The Court does not address the "duty of water" issue in that the appellant does not argue, nor did he raise an issue of a greater duty of water than that approved by the director; this is proper. I am, however, greatly concerned that the director is not correctly applying the proper law to the duty of water. Finding of fact 21 of the director's memorandum decision and order states:

21. The duty of water in the Payette River Drainage is generally based on not more than 0.02 cfs per acre with consideration for reasonable losses incurred.

This is clearly not a sufficient finding as to the duty of water to support a water right. The historic Dobson Porter Creek water right was based on 1.6 cfs diversion for 96 acres, thus the duty of water under the decree is 0.0167 cfs per acre (1.6 cfs/96 acres = 0.0167).

The department's finding of a forfeiture of 6 acres without a proportionate decrease in the 1.6 cfs diversion rate increased the duty of water to 0.0178 cfs per acre (1.6 cfs/90 acres = 0.0178). This is an enlargement of the right in violation of I.C. § 42–222.

The department's error appears to have been caused by comparing the new duty of 0.0178 cfs (1.6 cfs/90 acres) to the limit of 0.02 cfs contained in I.C. § 42–220. Finding that the new duty of water was less than the statutory maximum, the department authorized the transfer. This was erroneous as the water right established the duty of water at 0.0167 cfs. Any proposed change in use cannot exceed the duty of water as originally established. I.C. § 42–222(1); *Jenkins v. Department of Water Resources*, 103 Idaho 384, 647 P.2d 1256 (1982).