797 P.2d 856

**Barry SILVERSTEIN, Plaintiff–Appellant Cross Respondent,**

v.

**Ronald D. CARLSON, Watermaster; Dee O'Brien, Deputy Watermaster, Defendants–Respondents,**

and

**Vernal Foster, Defendant–Respondent Cross Appellant.**

No. 18203.

Supreme Court of Idaho.

Aug. 30, 1990.

Hopkins, French, Crockett, Springer & Hoopes, Idaho Falls, for plaintiff-appellant. C. Timothy Hopkins argued.

Jim Jones, Atty. Gen., A. Lynne Krogh–Hampe, Deputy Atty. Gen., Boise, for defendants-respondents Carlson and O'Brien. A. Lynne Krogh–Hampe argued.

Anderson, Pike & Bush, Idaho Falls, for defendant-respondent Foster. Edward W. Pike argued.

JOHNSON, Justice.

This is a water rights case. The primary issue presented is whether the trial court correctly interpreted a prior adjudication of water rights as establishing priority to the use of certain waters and properly apportioned the rights to the water. We hold that there was substantial and competent evidence to support the interpretation of the trial court, that the trial court used the appropriate method of allocating the rights to the water, and that the trial court did not abuse its discretion in rejecting certain exhibits offered at trial.

We also hold that the trial court was correct in denying a post-judgment motion for a new or separate trial on issues of forfeiture, estoppel, abandonment, and adverse possession of water rights determined in the judgment.

We vacate the denial of attorney fees for dissolving a temporary restraining order and remand this question to the trial court for clarification and further consideration.

I.

THE BACKGROUND AND PRIOR PROCEEDINGS.

This is a tale of two springs. Both springs are located on the western slope of the Teton Mountains near the border of Idaho and Wyoming. The springs are approximately four miles apart. The first springs (Crandall Springs I) is the more northerly of the two and empties into Spring Creek. The more southerly of the two (Crandall Springs II) empties into Sorensen Creek.

In 1910, District Judge J.M. Stevens entered a decree (the Rexburg Decree) determining the right of several hundred parties to use water from the upper Snake River and its tributaries. The Rexburg Decree declared that two parties have the right to use water from "Crandall Springs." One of these parties was a prior owner of the land Vernal Foster now owns. The other was a person whose land was in the area of Crandall Springs I.

During the summer of 1981 when the flow of Crandall Springs II and Sorensen Creek reached a low level, Foster placed a

dam across them, preventing any water from reaching Barry Silverstein's land. Silverstein filed an action seeking to enjoin Foster, the watermaster, and the deputy watermaster, from obstructing Silverstein's use of water from Crandall Springs II and Sorensen Creek and requesting a summary supplemental adjudication of rights to the use of water from these sources.

The trial court granted a temporary restraining order restraining the watermaster, the deputy watermaster, and Foster from interfering with Silverstein's use of one-half of the water of Crandall Springs II and Sorensen Creek. Silverstein furnished an undertaking in the amount of $3,000.00 as security for the payment of costs, attorney fees, and damages if any party were found to have been wrongfully enjoined or restrained.

Pursuant to I.C. § 42–1405 (1990), the director of the Idaho Department of Water Resources (the director) conducted an examination of the water rights claimed by Silverstein. In 1986, the director submitted a report (the director's report) to the trial court, Silverstein, and Foster. The director's report concluded that the Rexburg Decree did not determine the rights to the use of water from Crandall Springs II and Sorensen Creek. The director recommended to the trial court that Silverstein and Foster each have the right to the use of .80 cfs (cubic feet per second) of the water of Crandall Springs II and Sorensen Creek, with neither having a priority over the other to this extent. The director also recommended that Foster have a second right to the use of .17 cfs from these sources, with a 1903 priority date, and that Silverstein have a second right to the use of .87 cfs, with a 1906 priority date.

Silverstein objected only to the portion of the director's report that recommended a 1903 priority date for Foster's second right. Foster objected to the conclusion contained in the director's report that the Rexburg Decree did not determine the right of Foster's predecessor in interest to the use of the water of Crandall Springs II and Sorensen Creek. Foster also objected to the use of some of the evidence upon which the director relied in the director's report.

Following a trial in 1989, the trial court issued findings of fact and conclusions of law. The trial court followed the director's report, except with regard to the effect of the Rexburg Decree. The trial court found that the Rexburg Decree adjudicated the right of Foster's predecessor in interest to use water from Crandall Springs II and Sorensen Creek and that Foster had a right to use .74 cfs of the water from these sources, with an 1899 priority date.

Foster moved to amend the findings and conclusions, to dissolve the restraining order, and to award Foster attorney fees incurred in obtaining dissolution of the restraining order. The trial court dissolved the restraining order, but did not award Foster attorney fees.

The trial court entered judgment awarding Foster the right to use .74 cfs of the water of Crandall Springs II and Sorensen Creek, with an 1899 priority date, and .23 cfs, with a 1910 priority date. The trial court awarded Silverstein the right to use .80 cfs of the water of Crandall Springs II and Sorensen Creek, with a 1901 priority date, and .87 cfs, with a 1906 priority date.

Silverstein then moved for a new trial or a separate trial on the issues of forfeiture, estoppel, abandonment, and adverse possession. The trial court denied the motion on the ground that Silverstein had waived these claims by failing to raise them in a response to Foster's objection to the director's report.

Silverstein appealed the judgment and the denial of the motion for new trial or separate trial. Foster appealed the denial of attorney fees.

## II.

THERE WAS SUBSTANTIAL AND COMPETENT EVIDENCE TO SUPPORT THE DECISION OF THE TRIAL COURT THAT THE REXBURG DECREE ADJUDICATED THE PRIORITY OF FOSTER'S PREDECESSOR IN INTEREST TO THE USE OF CRANDALL SPRINGS II AND SORENSEN CREEK.

Silverstein asserts that the trial court incorrectly interpreted the Rexburg

Decree as having adjudicated the right of Foster's predecessor in interest to the use of the waters of Crandall Springs II and Sorensen Creek. We conclude that there was substantial and competent evidence to support the decision of the trial court that the Rexburg Decree awarded Foster's predecessor in interest the right to use the waters of Crandall Springs II and Sorensen Creek.

The trial court found that the Rexburg Decree was ambiguous when it referred to "Crandall Springs" in relation to the water rights of Foster's predecessor in interest. All of the parties agree with this finding. The trial court resolved this ambiguity by considering the circumstances surrounding the award of these water rights in the Rexburg Decree. Our only task is to determine whether the trial court's decision is supported by substantial and competent evidence. *Lester v. Lester*, 104 Idaho 244, 658 P.2d 915 (1983).

In reaching its decision, the trial court relied (1) on the fact that Foster's predecessor in interest could not have used water from Crandall Springs I on the property that Foster now owns and (2) on the implications of a notice of water right filed by a predecessor in interest of Silverstein. This notice listed both Silverstein's predecessor in interest and Foster's predecessor in interest as claimants to the use of water to be diverted from a source that was stated to be located in the same locale as Crandall Springs II and Sorensen Creek. Foster's predecessor in interest testified in the hearing that led to the Rexburg Decree that this was the source of the water he was using on the land Foster now owns. While there is conflicting evidence that might have been used to resolve the ambiguity otherwise, the evidence upon which the trial court relied constitutes substantial and competent evidence to support its decision.

### III.

### THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN NOT ADMITTING AFFIDAVITS AND A LETTER OFFERED BY SILVERSTEIN.

■ Silverstein asserts that the trial court should have admitted two affidavits and a letter that the director considered in preparing the director's report. We conclude that the trial court did not abuse its discretion in not admitting these exhibits.

The asserted purpose of the affidavits and the letter was to establish that the predecessors in interest of both Silverstein and Foster understood that they had an equal interest in the use of water from Crandall Springs II and Sorensen Creek. The parties dispute whether these exhibits were properly authenticated and whether they were admissible under the ancient document exception to the hearsay rule. While these are intriguing questions, the admissibility of these exhibits is a much simpler issue. The exhibits were not relevant to the issue before the trial court.

The issue was whether the Rexburg Decree had established the right of Foster's predecessor in interest to the use of the water from Crandall Springs II and Sorensen Creek. Neither the affidavits nor the letter shed any light on what the Rexburg Decree intended when it awarded water rights in "Crandall Springs" to Foster's predecessor in interest. These exhibits might have been relevant if the trial court had been confronted with the issue of what use the predecessors in interest of Silverstein and Foster had made of the water after the Rexburg Decree. However, that was not the issue presented. The trial court did not abuse its discretion in excluding these exhibits.

### IV.

### THE TRIAL COURT USED THE APPROPRIATE METHOD IN ALLOCATING THE RIGHTS TO USE WATER FROM CRANDALL SPRINGS II AND SORENSEN CREEK.

■ Silverstein asserts that the trial court used the wrong method in allocating the rights to use water from Crandall Springs II and Sorensen Creek. We disagree.

The enigma the trial court faced was that the Rexburg Decree awarded to Foster's

predecessor in interest the right to use on five parcels of land 3.6 cfs of water from three different sources. The decree did not allocate the right among the three sources or the five parcels.

In making the allocation in this case, the trial court relied on the method used in *Crow v. Carlson*, 107 Idaho 461, 690 P.2d 916 (1984). *Crow* dealt with a somewhat different problem of allocation than the issue presented to the trial court here. In *Crow*, this Court considered the allocation of the right to use an amount of water on 240 acres of land. The owner of eighty acres of this land sought the use of a portion of the water rights awarded for the 240 acres. The Court instructed the trial court to divide the water right between the current owners of the 240 acres in proportion to the land owned by each.

Here, in awarding Foster .74 cfs with an 1899 priority, the trial court accepted the suggestion of the Idaho Department of Water Resources to apply *Crow* in the following fashion:

1. Without specifying how much water was awarded from any particular source, the Rexburg Decree awarded Foster's predecessor in interest 3.6 cfs from three separate sources, including "Crandall Springs."
2. Without specifying how much water might be used on each parcel, the Rexburg Decree awarded these rights to apply to parcels that totalled 195.42 acres. The forty acres that is now owned by Foster is adjacent to Crandall Springs II and Sorensen Creek. The remaining 155.42 acres were further north and could not be serviced by Crandall Springs II and Sorensen Creek.
3. The forty acres that Foster owns represents 20.46 percent of the 195.42 acres. Multiplying 3.6 cfs times 20.46 percent allocates .74 cfs to Foster.

Although there are distinctions between the circumstances here and the circumstances in *Crow* and in the cases upon which *Crow* relied, we conclude that the method approved in these decisions is applicable to the allocation here. The Court in *Crow* cited *Russell v. Irish*, 20 Idaho 194, 118 P. 501 (1911), which dealt with the allocation of water rights that had been acquired for eighty acres. Twenty of those acres were conveyed without reference to the water rights that accompanied the conveyance. In *Russell*, this Court said:

> [I]t is well established that a water right is an appurtenance to the land on which it has been used and will pass by conveyance of the land. A division of the land would divide the appurtenant water right in the same proportion as it divided the land. In this case the twenty acres of land was deeded *together with the appurtenances*. This conveyance would carry with it the water right appurtenant to the land at the time of the conveyance, unless it was specifically reserved in the deed or it could be clearly shown that it was known to both parties that the water right was not intended to be conveyed. It is conceded here that the thirty-inch water right had been used in reclaiming the entire eighty-acre tract of land. It had become appurtenant to the whole tract and not to a specific portion thereof or alone to the sixty acres retained by the respondent.

*Id.* at 198–99, 118 P. at 502 (emphasis in original; citations omitted).

In *Hunt v. Bremer*, 47 Idaho 490, 493, 276 P. 964, 965 (1929), the Court cited *Russell* and stated: "A division of a tract of land to which water is appurtenant, without segregating or reserving the water right, works a division of such water right in proportion as the land is divided."

There are two distinctions in the circumstances here from those in *Hunt, Russell* and *Crow*. The forty acres that Foster now owns were not divided from the remaining 155.42 acres that Foster's predecessor owned at the time of the Rexburg Decree; this parcel was separate from the others at the time the water rights were awarded in the Rexburg Decree. Only the water from Crandall Springs II and Sorensen Creek were appurtenant to the forty acres that Foster now owns. However, we are left with the puzzle of how to determine what water rights were made appur-

tenant by the Rexburg Decree to the forty acres now owned by Foster.

Foster's predecessor in interest, who testified at the hearing that led to the Rexburg Decree, indicated that two inches of water per acre was the appropriate amount necessary to irrigate all the parcels he owned that the three sources specified in the Rexburg Decree irrigated. Therefore, it is logical that the Rexburg Decree awarded the water rights to Foster's predecessor in interest from three sources for use on five parcels in proportion to the number of acres in each parcel. This leads us to the same proportional method of allocating the water rights the Rexburg Decree awarded to Foster's predecessor in interest as the method specified in *Crow*. Although our rationale is different, the result is the same.

## V.

THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN RULING THAT SILVERSTEIN WAS NOT ENTITLED TO A NEW OR SEPARATE TRIAL ON THE ISSUES OF FORFEITURE, ESTOPPEL, ABANDONMENT, OR ADVERSE POSSESSION.

Silverstein asserts that the trial court should have granted a new trial or separate trial to allow him to pursue whether Foster's prior rights to the use of water from Crandall Springs II and Sorensen Creek had been divested by forfeiture, estoppel, abandonment, or adverse possession. We disagree.

Silverstein brought this action for a summary supplemental adjudication of water rights pursuant to I.C. § 42–1405. As authorized by I.C. § 42–1405(f), the director filed the director's report. Silverstein and Foster each objected to portions of the director's report, pursuant to I.C. § 42–1412(1) (1990). The director then filed responses to these objections, as provided for in I.C. § 42–1412(2) (1990). I.C. § 42–1412(4) (1990) states:

> The report of the director, objections, responses to objections, notices of claims and any negotiated agreement between

the state of Idaho and any federal reserved water right claimant shall constitute the pleadings. The district court may allow such further or amended pleadings as may be necessary for a final determination of the proceedings.

The trial court stated in its findings that there was no claim by Silverstein that Foster had lost any portion of the water right to Crandall Springs II awarded by the Rexburg Decree by "forfeiture, abandonment, by adverse possession or prescriptive use." Silverstein agrees that this finding is correct, but argues that it was not necessary for him to raise these issues until the trial court rejected the conclusion of the director's report that the Rexburg Decree had not determined the water rights to Crandall Springs II and Sorensen Creek.

I.C. § 42–1412(9) (1990) states that: "[t]he portions of the director's report for which no objection was filed shall be admitted as true facts." Because Foster objected to the conclusion of the director's report that the Rexburg Decree had not determined the water rights to Crandall Springs II and Sorensen Creek, a contested issue arose. This opened the possibility that the trial court might conclude, as it did, that these rights were determined by the Rexburg Decree. Silverstein had the burden to raise any issue as to forfeiture, estoppel, abandonment, or adverse possession by a further or amended pleading before the trial court decided the case and entered judgment.

Silverstein made a post-judgment motion for a new trial or separate trial pursuant to I.R.C.P. 59(a), 42(b), or 53(e)(2). The trial court did not abuse its discretion in deciding that there was no error of law, surprise, or irregularity in the proceedings that would lead to the granting of a new trial pursuant to I.R.C.P. 59(a). The trial court pointed out that the reason that it did not address issues of forfeiture, estoppel, abandonment, or adverse possession was because Silverstein did not raise these issues. The trial court also did not abuse its discretion in ruling that the motion for separate trial pursuant to I.R.C.P. 42(b)

was not timely, since Silverstein did not make the motion before trial.

We also agree with the trial court that the procedures for considering the findings of a master pursuant to I.R.C.P. 53(e)(2) do not control an action for summary supplemental adjudication of water rights. The effect of the report of the director is not the same as the effect of the findings of a master. The director's report is only one of the pleadings in a supplemental adjudication. Only if there is no objection is a portion of the report considered to be admitted. When a master has been appointed to make findings in a nonjury case, "the court shall accept the master's findings of fact unless clearly erroneous." I.R.C.P. 53(e)(2) (1987).

## VI.

### THE TRIAL COURT SHOULD RECONSIDER THE ISSUE OF ATTORNEY FEES FOR DISSOLVING THE RESTRAINING ORDER IN LIGHT OF *DURRANT V. CHRISTENSEN.*

 Foster asserts that the trial court should have awarded him attorney fees incurred in dissolving the restraining order pursuant to I.R.C.P. 65(c). We vacate the denial of attorney fees and remand this issue to the trial court for clarification and further consideration in light of *Durrant v. Christensen*, 117 Idaho 70, 785 P.2d 634 (1990).

In denying the award of attorney fees Foster incurred in obtaining the dissolution of the restraining order, the trial court ruled that Foster was not entitled to fees that were incurred in the trial on the merits. The trial court concluded that the dissolution was "incidental to the resolution of issues involved in the trial on the merits." In making this decision the trial court did not have the benefit of our opinion in *Durrant* that was issued several months later.

In *Durrant,* we said:

Rule 65(c) allows the trial court to award costs and reasonable attorney fees to any party who is found to have been wrongfully enjoined or restrained. Durrant and Sellers argue that the costs and fees awarded to Christensen were attributable in defending the merits of the case and therefore the provisions of I.R.C.P. 65(c) should not apply.... Idaho case law interpreting Rule 65(c) allows recovery of attorney fees if legal services necessary to defend the merits of the case were identical to services performed in dissolving a restraining order. Thus, assuming there was an adjudication on the merits, recovery of attorney fees would be appropriate provided the trial court found the restraining order and merit issues were identical....

*Id.* at 73, 785 P.2d at 637 (citations omitted).

One of the allegations of the verified complaint upon which the restraining order was based was that the Rexburg Decree did not include Silverstein's predecessors in interest and did not determine their rights to the waters of Crandall Springs II and Sorensen Creek. Following the trial, the trial court decided that these allegations were not correct. We are unable to determine how the trial court reached the conclusion that the dissolution of the restraining order was only incidental to the resolution of the merits of this case. Therefore, we vacate the denial of attorney fees and remand this issue to the trial court for clarification and for further consideration in light of *Durrant.*

## VII.

### CONCLUSION.

We affirm the decision of the trial court as to the supplemental adjudication and denial of a new trial or separate trial. We vacate the order denying attorney fees to Foster incurred in the dissolution of the restraining order and remand this issue to the trial court for clarification and for further consideration in light of *Durrant.*

We award costs on appeal, but not attorney fees, to respondents.

BAKES, C.J., BOYLE and McDEVITT, JJ., and WINMILL, J., pro tem., concur.