833 P.2d 99

**EASTERN IDAHO REGIONAL MEDICAL CENTER, Plaintiff–Appellant,**

v.

**BOARD OF COMMISSIONERS OF BONNEVILLE COUNTY, IDAHO, Defendant–Respondent.**

No. 19463.

Supreme Court of Idaho,
Boise, May 1992 Term.

June 3, 1992.

St. Clair, Hiller, St. Clair & Dalling, Idaho Falls, for plaintiff-appellant. V. Dean Dalling, Jr., argued.

Anderson, Pike & Bush, Idaho Falls, for defendant-respondent. Blake G. Hall, argued.

McDEVITT, Justice.

## NATURE OF THE CASE

This case deals with an application for county medical indigency aid. A teenage girl, Nichole Marquez, was admitted to Eastern Idaho Regional Medical Center's (the "hospital") Behavioral Unit. An application for county indigency aid was not filed with Bonneville County ten (10) days prior to the girl's voluntary admittance. The county denied medical indigency aid after a post-admission application was filed within forty-five (45) days after Nichole Marquez's admittance. A hearing was conducted by the Board of Commissioners of Bonneville County (the "board"). After the hearing, the board affirmed the denial, finding that the girl was not admitted on an "emergency" basis and that the county

was prejudiced by the untimely filing. The district court affirmed, and the Court of Appeals reversed and remanded. This Court granted a petition for review. We affirm the decision of the Board of Commissioners.

## BACKGROUND AND PRIOR PROCEEDINGS

A. *Events Leading Up To The Application For County Indigency Assistance.*

On March 26, 1987, Nichole Marquez was admitted into the hospital after ingesting a large amount of aspirin. As part of her treatment, she began counseling with a social worker named Gary G. McKell.

Several weeks after the March 26, 1987 hospital admission, Nichole Marquez ran away from home. She continued to keep in contact with Mr. McKell, on occasion threatening suicide, but did not contact her mother, Penny Marquez ("Ms. Marquez"). Mr. McKell and Ms. Marquez also kept in contact. In particular, they discussed the need for Nichole Marquez to receive further treatment as well as treatment options, including State Hospital South. Eventually, Mr. McKell talked Nichole Marquez into admitting herself into the Behavioral Unit of the hospital. She did so on May 8, 1987, and remained a patient in the hospital until her discharge on May 29, 1987, incurring hospital charges totalling $6,518.73.

B. *The Application For County Medical Indigency Aid.*

On June 18, 1987, Ms. Marquez filed an application for county medical indigency aid. Following a county investigation, the board denied the application on July 7, 1987. The July 7, 1987 denial stated that the investigation had revealed that indigency status was undocumented, emergency status was undocumented, that Bonneville County Welfare was not the last resort, as State Hospital South was available, and that Bonneville County does not pay for inpatient psychiatric counseling.

Following the denial of county medical indigency aid, Penny Marquez and the hospital requested a reconsideration hearing. On August 19, 1987, the board issued a second certificate of denial of county aid. In the August 19, 1987 denial, the board stated that reconsideration was denied because no emergency existed and because Bonneville County Welfare was not the last resort.

Following the August 19, 1987 denial, Nichole Marquez and the hospital filed additional requests for a hearing.

On October 27, 1987, the board issued a third certificate of denial for county aid. This time, the board listed five reasons for the denial: (1) indigency not documented; (2) emergency status not documented; (3) whether Bonneville County is the proper county for aid not documented; (4) whether Bonneville County is the last resort not documented; and (5) untimely application.

On November 24, 1987, Penny Marquez filed a request for hearing to reconsider the board's October 27, 1987 denial of county assistance. After hearing dates were set and then continued, the hearing on the denial was finally held before the board on June 1, 1988.

At the hearing, the board allowed the hospital to introduce four affidavits into evidence over the objection of the county. These four affidavits asserted the following:

1. *Affidavit of George A. Williams, M.D.:* Dr. Williams was the doctor who admitted Nichole Marquez into the hospital on May 8, 1987. In the affidavit, he stated that she was admitted "for emergency hospitalization as [Nichole] Marquez was suffering from depression, reaction of adolescence secondary to parent-child conflict, and suicidal ideation amounting to a life threatening situation if not treated immediately." In addition, Dr. Williams stated that Nichole Marquez's condition, "if untreated, was likely to cause death or serious disability...."

The billing of Nichole Marquez's treatment as well as her medical records were attached to Dr. William's affidavit. A medical record entitled "History and Physi-

cal" stated that "[t]his is a 15 year old female who was admitted to the Behavioral Health Unit at the request of Gary McKell because of runaway, school sloughing, and oppositional behavior." A medical record entitled "Discharge Summary" stated that "[t]his fifteen year old female was admitted because of runaway and dropping out of school and severe parent-child conflict."

2. *Supplemental Affidavit of George M. Williams, M.D.:* In his supplemental affidavit, Dr. Williams stated that "there was not time to petition to the county for treatment prior to [Nichole Marquez's] admission." She was admitted to the hospital on an "emergency situation."

3. *Affidavit of Gary McKell:* In his affidavit, Mr. McKell stated that when Nichole Marquez was admitted into the hospital, it was his opinion "that such was necessary since Nichole [Marquez] was at high risk for suicide and her behavior strongly evidenced a self-destructive pattern." Furthermore, Mr. McKell stated that "Nichole Marquez had run away from home and her location in the Idaho Falls area was unknown and in Affiant's opinion the situation was volatile due to her self-destructive behavior."

Mr. McKell attached a letter that he wrote to Penny Marquez on July 23, 1987, regarding Ms. Marquez's concerns about the hospital bill. In the letter, Mr. McKell stated that at the time Nichole Marquez ran away from home "[i]t was apparent that she was very unstable, ambivalent about getting help, and self-destructive." In addition, during Nichole Marquez's absence from home, Mr. McKell stated that "[s]he also made suicidal threats." Finally, at the time of her admittance into the hospital, Mr. McKell stated that it was his judgment "that Nichole [Marquez] was a high risk for suicide.... Placement seemed urgent in light of her willingness to go to the hospital which in her condition could change at any time."

4. *Affidavit of Thomas M. Weiss:* Mr. Weiss was the administrator of the hospital. In his affidavit, Mr. Weiss stated that the rates and charges for the services Nichole Marquez received at the hospital were customary and reasonable.

On July 7, 1988, the board issued its findings, conclusions, and order denying Nichole Marquez's application for county medical indigency aid. The board found that "[t]he services rendered to Nichole Marquez were provided in a non-emergency, voluntary admission." In the conclusions, the board recognized that I.C. § 31–3404 requires that an indigent person in need of medical attention must file a written application with the clerk of the board "not less than ten (10) days prior to admission to any health care facility or hospital" except as provided in Section 31–3504. I.C. § 31–3504 provides that "[a]n application for or on behalf of a medically indigent person receiving emergency medical services may be made at any time within forty-five (45) days following the admission of said person to the hospital...." In this regard, the board found that "[n]o written application was made to the county requesting assistance on anticipated medical bills of Nichole Marquez at least ten (10) days prior to May 8, 1987."

The issue as the board saw it was "whether or not the services rendered were rendered under emergency circumstances not requiring an application to be filed until 45 days after services are rendered." "Idaho Code Section 31–3407 provide[s] that '... services rendered in an emergency are defined as those reasonable and necessary to alleviate illness or injury which if untreated is likely to cause death or serious disability....' " The board examined the evidence and concluded that there was a conflict. In particular, the board stated that the affidavit of Dr. Williams and the medical records attached thereto conflicted in that the medical records did not mention "any possibility of suicide or threat of death or serious disability if the child remains untreated." In addition, the board stated that the medical records established that Nichole Marquez was voluntarily admitted into the hospital. Also, the board stated that the testimony of Penny Marquez as well as the records of the Department of Health and Welfare established that the parties knew that Ni-

chole Marquez needed treatment "no later than April 15, 1987, and probably as early as April 1, 1987" thus giving them "ample opportunity ... to comply with Idaho Code Section 31–3404 which calls for pre-admission." Finally, the board found that the county was prejudiced by the failure of Ms. Marquez to make a pre-admission application because there could have been other ways to treat Nichole Marquez, such as State Hospital South. The board affirmed its prior decision of denial and did not reach the issue of whether medical indigency, as defined by I.C. § 31–3502(1), had been established.

### C. Appeal From The Board To The District Court.

On August 5, 1988, the hospital filed a notice of appeal in the District Court for the Seventh Judicial District of the State of Idaho, in and for the County of Bonneville. The hospital appealed from the July 7, 1988 findings, conclusions, and order of the board, and the appeal was filed pursuant to I.C. §§ 31–3505 and 67–5215(a) and I.R.C.P. 83(c). In the notice of appeal, the hospital stated:

4. The issues on appeal which appellant intends to assert are as follows:

a. Whether Nichole Marquez's treatment by appellant was pursuant to an emergency or a non-emergency requiring pre-admission approval.

b. Whether respondent was prejudiced by appellant's failure to obtain pre-admission approval.

c. Pursuant to Idaho Code § 12–117(1) appellant is entitled to its costs and attorney fees because respondent's decision is unreasonable.

The district court heard oral argument on January 22, 1990, and issued its memorandum decision affirming the decision of the board on March 9, 1990. In the memorandum decision, the district court noted that whether I.C. § 31–3404 applies "depends upon the existence or non-existence of an emergency at the time of admission." The district court restated the facts of the case, noting that Nichole Marquez voluntarily admitted herself into the hospital, and found that "[t]he findings and conclusion that an emergency did not exist is supportable and the order of the board is affirmed." In so holding, the district court stated that its standard of review was governed by the Administrative Procedure Act, title 67, chapter 52, Idaho Code, and it cited *Workman Family Partnership v. City of Twin Falls*, 104 Idaho 32, 655 P.2d 926 (1982), for the proposition that "the findings of an agency would have to be 'clearly inadequate' before a court could substitute its judgment for a hearing officer's determination."

### D. Appeal From The District Court.

On April 13, 1990, the hospital filed a notice of appeal "from the Memorandum Decision entered in the above-entitled action on March 8, 1990...." The notice of appeal was filed pursuant to I.A.R. 11(a)(2). The appeal was assigned to Idaho Court of Appeals, which reversed the district court. 121 Idaho 788, 828 P.2d 351 (1991).

On April 19, 1991, the board petitioned this Court for review of the opinion of the Court of Appeals. This Court granted the board's petition for review on August 6, 1991. The petition was granted "as to the issues presented in the appeal."

### SCOPE AND STANDARD OF REVIEW

When a case comes before this Court on a petition for review from an opinion of the Court of Appeals, "we do not focus on the opinion of the Court of Appeals, but rather on the decision of the district court." *Sato v. Schossberger*, 117 Idaho 771, 775, 792 P.2d 336, 340 (1990). Additionally, "[s]ince the district court was acting in its appellate capacity, in the appeal to this Court we can review the record independently of the district court's decision." *Ferguson v. Board of County Com'rs*, 110 Idaho 785, 788, 718 P.2d 1223, 1226 (1986), citing *First Interstate Bank of Idaho v. West*, 107 Idaho 851, 852–53, 693 P.2d 1053, 1054–55 (1984).

This Court has stated:

Idaho Code § 31–3505 provides that judicial review of a decision by the Board of County Commissioners shall be in 'sub-

stantially the manner provided in the Administrative Procedure Act.' Under the Act, a person who has exhausted all administrative remedies is entitled to judicial review. I.C. § 67–5215. The standard of review by this Court of an agency decision is set forth in I.C. § 67–5215(g)....

*St. Alphonsus Med. Ctr. v. Canyon County,* 120 Idaho 420, 422, 816 P.2d 977, 979 (1991).

Idaho Code § 67–5215(g) provides:

(g) The Court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(1) in violation of constitutional or statutory provisions;

(2) in excess of the statutory authority of the agency;

(3) made upon unlawful procedure;

(4) affected by other error of law;

(5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

"A finding of fact without any basis in the record," as well as "a finding of fact lacking substantial and competent evidence to support it is clearly erroneous." *Dovel v. Dobson,* 122 Idaho 59, 831 P.2d 527 (1992), citing *Tappen v. Department of Health & Welfare,* 98 Idaho 576, 570 P.2d 28 (1977); *Hubbard v. Canyon County Com'rs,* 106 Idaho 436, 680 P.2d 537 (1984). "In order to uphold an agency's finding, we must find more than a mere scintilla of evidence," but we can reverse an agency's decision "[i]f we cannot find any support for the agency's decision." *Dovel,* 122 Idaho at 62, 831 P.2d at 530, citing *Idaho State Ins. Fund v. Hunnicutt,* 110 Idaho 257, 715 P.2d 927 (1986); *Idaho County Nursing Home v. Department of Health & Welfare,* 120 Idaho 933, 821 P.2d 988 (1991); *Love v. Board of County Com'rs,* 105 Idaho 558, 671 P.2d 471 (1983).

## ISSUES ON APPEAL

I. Is the board's finding that Nichole Marquez was not admitted to the hospital for emergency purposes, as defined by I.C. § 31–3407, supported by substantial and competent evidence?

II. Did the board err by concluding that the county was prejudiced by the post-admission application for county medical indigency aid?

III. Is the board or the hospital entitled to attorney fees on appeal?

## ANALYSIS

### I.

Is The Board's Finding That Nichole Marquez Was Not Admitted To The Hospital For Emergency Purposes, As Defined By I.C. § 31–3407, Supported By Substantial And Competent Evidence?

■ Idaho Code § 31–3407 states that "[s]ervices rendered in an emergency are defined as those reasonably necessary to alleviate illness or injury which if untreated is likely to cause death or serious disability."

The affidavit of Dr. George A. Williams states that Nichole Marquez was admitted to the hospital "for emergency hospitalization as Ms. Marquez was suffering from depression, reaction of adolescence secondary to parent-child conflict, and *suicidal ideation amounting to a life threatening situation if not treated immediately.*" (Emphasis added.) Dr. Williams also stated that Nichole Marquez's admission was "reasonably necessary to alleviate her illness which, if untreated, was *likely to cause death or serious disability....*" (Emphasis added.)

The affidavit of Gary McKell states that at the time of her admission, it was his opinion that Nichole Marquez "was at high risk for *suicide....*" (Emphasis added.)

In his affidavit, Dr. Williams also stated that "the attached medical records contain a summary of my diagnosis and treatment, and I continue to concur with my attached reports, incorporated herein as if set forth in full." In the "History and Physical" record attached to the affidavit of Dr. Williams, he states that Nichole Marquez was admitted to the hospital "because of *runaway, school sloughing, and oppositional behavior.*" (Emphasis added.) In the "Discharge Summary" record attached to the affidavit of Dr. Williams, he states that Nichole Marquez was admitted to the hospital "because of *runaway and dropping out of school and severe parent-child conflict.*" Neither the "History and Physical" record nor the "Discharge Summary" record mention suicide as a reason for Nichole Marquez's admittance.

The evidence also revealed that Mr. McKell and Ms. Marquez discussed the need for Nichole Marquez to receive further treatment after she ran away from home and prior to her May 8, 1987 admission. In addition, there is nothing in the evidence that was before the board that indicates a change in the condition of Nichole Marquez during this time.

Our review of the record before the commission reveals that there was conflicting evidence. A "conflict of evidence should and must be resolved by a fact finder which here we deem to be appropriately" the board. *Tappen v. Department of Health & Welfare,* 98 Idaho 576, 578, 570 P.2d 28, 30 (1977). On the one hand, there are the affidavits of Dr. Williams and Mr. McKell stating that Nichole Marquez was admitted into the hospital on an emergency basis due to suicidal ideation. On the other hand, there are the medical records indicating that she was admitted for running away, dropping out of and sloughing in school, oppositional behavior, and a severe parent-child conflict. Additionally, there is the evidence indicating that Mr. McKell and Ms. Marquez had discussed Nichole Marquez's need for further treatment prior to her May 8, 1987 admission. There was evidence to support a conclusion that an emergency did exist as well as one that it did not. The board resolved this conflict by concluding that an emergency did not exist on May 8, 1987.

It is a rule of administrative law that a "reviewing court may not substitute its judgment for that of the administrative hearing officer on questions of fact." *Van Orden v. Department of Health & Welfare,* 102 Idaho 663, 667, 637 P.2d 1159, 1163 (1981). Although different conclusions could have been reached by the board in this case, we cannot say that the conclusion that an emergency did not exist on May 8, 1987, was "without any basis in the record." *Dovel,* 122 Idaho at 62, 831 P.2d at 530. The medical records attached to the affidavit of Dr. Williams and the evidence regarding the discussions between Mr. McKell and Ms. Marquez prior to May 8, 1987, provide substantial and competent evidence to support the board's conclusion.

## II.

**Did The Board Err By Concluding That The County Was Prejudiced By The Post-Admission Application For County Medical Indigency Aid?**

This Court has held that it is inappropriate for a county to deny an application for county medical indigency aid "simply because the application submitted does not comply with the technical requirements of I.C. § 31–3404...." *Carpenter v. Twin Falls County,* 107 Idaho 575, 582, 691 P.2d 1190, 1197 (1984). Instead, "the issue of prejudice to the county resulting from a lack of notice is one which should be inquired into prior to approving or denying an application...." *University of Utah Hosp. v. Board of County Com'rs,* 116 Idaho 434, 439, 776 P.2d 443, 448 (1989).

The hospital argues that the board failed to set forth any prejudice suffered by the county as a result of the failure to file a pre-admission application for county medical indigency aid. In conclusion 12 of the findings, conclusions, and order, the board stated:

The parties to this matter should have filed an application at least ten (10) days prior to services being rendered. This would have allowed the county commissioners to examine the medical indigency

status of the parties as well as the necessity of the services contemplated being rendered. Additionally, it would have allowed the commissioners additional opportunity to examine alternative means of treatment that might have been provided more economically to the taxpayers of Bonneville County including the possibility of commitment to State Hospital South. Failure of the parties to make a pre-admission application prejudices the county from considering these other alternatives which opportunities are the very reason the code provides for pre-application in non-emergency situations.

Conclusion 12 sets forth two reasons for prejudice: (1) time to "examine the medical indigency status of the parties;" and (2) time to determine the "necessity of the services contemplated being rendered," including "alternative means of treatment." Thus, the record reveals that the board properly inquired into the issue of prejudice, specifically finding that the county was prejudiced by the post-admission application and giving specific reasons for that prejudice.

### III.

#### Is The Board Or The Hospital Entitled To Attorney Fees On Appeal?

■ Both parties requested attorney fees on appeal. Our rule is that the prevailing party on appeal may be granted attorney fees "when this court is left with the abiding belief that the appeal was brought, pursued or defended frivolously, unreasonably or without foundation." *Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979). Applying this rule to this case, we decline to award attorney fees on appeal.

For the foregoing reasons, the decision of the board is affirmed.

Costs to respondent.

BAKES, C.J., BISTLINE and JOHNSON, JJ., and REINHARDT, J., Pro Tem., concur.